# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| VERIZON WASHINGTON, D.C., INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-1925 (RC) |
| | : | | |
| v. | : | Re Document No.: | 12 |
| | : | | |
| UNITED STATES OF AMERICA, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### Granting in Part and Denying in Part Federal Defendants' Motion to Dismiss

## I. INTRODUCTION

Plaintiff Verizon Washington, D.C., Inc. ("Verizon") brings this action against the United States, the General Services Administration ("GSA"), and M & M Contractors, Inc. ("M & M"), a federal contractor. Verizon alleges it was injured when steam from underground facilities owned, maintained, controlled, or repaired by Defendants damaged Verizon's telecommunications equipment. Relying in part on the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80, Verizon brings negligence, nuisance, and trespass/interference with easement claims against each of the three Defendants.

The United States and GSA (collectively, "Federal Defendants") move to dismiss. Federal Defendants argue that Verizon's claims are barred by sovereign immunity and that Verizon fails to state a claim upon which relief can be granted. For the reasons set forth below, the Court finds that GSA is not a proper defendant under the FTCA and therefore dismisses the three counts brought directly against the federal agency. The Court also finds that the independent contractor exception to the FTCA bars claims against the United States to the extent

that the government delegated the relevant duties to M & M.  But the Court also concludes that

the vague allegations in Verizon's Amended Complaint prevent the Court from determining

whether Verizon has alleged any claims that fall outside the scope of the contract between the

government and M & M.  Thus, the Court orders Verizon to provide a more definite statement of

its claims.  Finally, the Court rejects Verizon's argument that the inherently dangerous nature of

the work at issue means that any duty is nondelegable under District of Columbia law.  Federal

Defendants' motion to dismiss is thus granted in part and denied in part.

## II.  BACKGROUND

The Court begins with a description of the facts giving rise to Verizon's claims and then

turns to the procedural history of this case.

### A.  Factual Allegations[1]

Verizon alleges that, at all times relevant to this action, the company maintained

telecommunication equipment near the intersection of 17th Street and F Street in Washington,

D.C.[2]  Am. Compl. ¶ 7.  The equipment constitutes a part of the company's telephone service

distribution system and was lawfully maintained in underground facilities at that location.

Am. Compl. ¶¶ 7–8.  On or about November 6, 2014, steam from steam pipes owned,

maintained, and controlled by the United States and/or GSA caused damage to Verizon's facilities.

Am. Compl. ¶ 8.

---

[1] When considering a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction, a court "accepts the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

[2] The Amended Complaint does not specify the quadrant of the District where the alleged damage occurred.  *See e.g.*, Am. Compl. ¶ 7–9, 15.  This omission is irrelevant to the Court's analysis.

According to the Amended Complaint, M & M[3] is a corporation that conducts business in Washington, D.C. Am. Compl. ¶ 6. On or about November 6, 2014, "agents, servants, and/or employees of M & M Contractors, Inc. were repairing steam pipes owned, maintained[,] and controlled" by the Federal Defendants when they caused damage to Verizon's underground facilities. Am. Compl. ¶ 9. Plaintiff notified GSA of a claim for property damage on or about February 17, 2015. Am. Compl. ¶ 10.

## B. The Agreement Between GSA and M & M[4]

In support of the motion to dismiss, Federal Defendants present the declarations of Kathy White and Greg Westphal. *See* Decl. of Kathy White ("White Decl."); ECF No. 12-1, Decl. of Greg Westphal ("Westphal Decl."), ECF No. 12-3. Ms. White is employed by GSA as a Contract Specialist assigned to the region covering Washington, D.C. White Decl. ¶ 1.

In her role as Contract Specialist, Ms. White states that she was responsible for the "implementation of the operations and maintenance services contract that was in effect at the GSA Steam Distribution System located at Heating, Operation and Transmission District, 13th

---

[3] Federal Defendants note that the contracting documents refer to "M&M Welding & Fabricators, Inc.," not "M & M Contractors, Inc." *See* Mem. P. & A. Supp. Fed. Defs.' Mot. Dismiss ("Defs.' Mem.") at 7 n.1. Verizon acknowledges this discrepancy. *See* Pl.'s Mem. P. & A. Supp. Pl.'s Opp'n Fed. Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 1 n.1, ECF No. 13-1 ("Defendants have disclosed the proper name of the subcontractor to be M & M Welding & Fabricators, Inc."). For consistency with the Amended Complaint, the parties continue to refer to M & M Contractors, Inc. *See* Defs.' Mem. at 7 n.1; Pl.'s Opp'n at 1 n.1. To avoid confusion, the Court will simply refer to "M & M."

[4] If necessary to resolve a challenge to subject matter jurisdiction under Rule 12(b)(1), a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Banneker Ventures*, 798 F.3d at 1129 (quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Here, Verizon does not object to the authenticity or veracity of the contract documents. *See generally* Pl.'s Opp'n. In fact, Verizon relies on facts found in these documents in its opposition to the motion to dismiss. *See* Pl.'s Opp'n at 4–7. Thus, for the purpose of resolving the jurisdictional challenge, the Court will rely on facts evidenced by these contract documents.

and C Street SW, Washington, DC, ('SDS') on November 6, 2014." White Decl. ¶ 3. Ms. White states that she has provided "the full set of contract documents" governing the relationship between GSA and M & M with regard to operations and maintenance services at the SDS.[5] White Decl. ¶ 4; *see also* White Decl., Ex. A, ECF No. 12-2.[6] The relevant contracting documents include a series of communications and agreements between GSA and M & M. *See, e.g.*, White Decl., Ex. A at 32–186 ("Price Proposal Offer" submitted by M & M to GSA on January 10, 2014); White Decl., Ex. A at 1–3 (letter from GSA to M & M dated June 17, 2014, accepting M & M's offer submitted in response to a GSA solicitation for a contract); White Decl., Ex. A at 4–8 ("Solicitation, Offer, and Award" issued by GSA on June 25, 2014, awarding M & M the relevant contract).

GSA formally awarded the contract to M & M for a period beginning on July 1, 2014. *See* White Decl. ¶ 5; White Decl., Ex. A at 5. For the purposes of this matter, a particularly relevant document is the Price Proposal Offer, especially Section C, which sets forth a detailed description of the agreement between GSA and M & M, including numerous specifications. *See* White Decl., Ex. A at 51–64. Section C states that the contractor "shall provide all management, labor, supervision, vehicles, equipment, and materials to perform all work as specified herein." White Decl., Ex. A at 52. The agreement also specifies that the contractor "shall coordinate with the Government regarding the prioritization of maintenance and repair work, including any additional tasks." White Decl., Ex. A at 52.

---

[5] According to Ms. White, the contracting documents have been redacted to remove proprietary information, including pricing. *See* White Decl. ¶ 5 nn.1–6.

[6] For clarity, the Court's citations to Exhibit A refer to the page numbers inserted at the bottom of each page. These page numbers match the page numbers automatically created by the Court's Electronic Case Filing ("ECF") system.

The agreement describes two categories of responsibilities for the contractor.  First, under the category "Basic Scope of Work (Lump Sum)," the contractor is responsible for "tours, inspections, basic operation, preventive maintenance, minor repairs and replacements (≤$1,000), and general housekeeping."  White Decl., Ex. A at 52.  Second, under the category "Additional Tasks As-Needed (Task Order Services)," the contractor is responsible for "additional tasks on a task order basis to assist the Government in accomplishing major and emergency repairs and replacements . . . (excluding capital improvement projects contracted separately)."  White Decl., Ex. A at 52.  Under this second category, GSA "will define the desired schedule for each specific task order to coordinate the Contractor's work with" GSA personnel and other contractors. White Decl., Ex. A at 58.  The agreement also states that "work will be accomplished through close coordination with [the Heating Operation and Transmission District], but the Contractor shall be required to provide field supervision and quality control functions."  White Decl., Ex. A at 57–58.

Section C states that the contractor "accepts full responsibility for the management and supervision of maintenance, minor repairs, inspections, and housekeeping of the [Heating Operation and Transmission District] steam distribution system."  White Decl., Ex. A at 53.  The agreement also requires the contractor to "recognize[] that performance of the work described in this solicitation will not convert the acts of the Contractor into acts of the Government, and that the Government will not physically supervise the conduct of the Contractor's day to day activities."  White Decl., Ex. A at 53.  But the agreement does permit GSA to "inspect the Contractor's performance of work to determine compliance with the solicitation requirements." White Decl., Ex. A at 53.  GSA may also "re-prioritize the Contractor's maintenance and repair work when doing so is in the best interest of the Government."  White Decl., Ex. A at 53.  The

agreement requires the contractor to "cooperate with Federal and local officials that enforce" mandatory safety requirements. White Decl., Ex. A at 59. Among other terms, Section C also requires GSA to provide the contractor "with radios and chargers that are to be supplied to each group of employees working in the tunnels" that "are to be used only to communicate with the [Federal Protective Service] MegaCenter and for emergencies." White Decl., Ex. A at 61.

Section H of the Price Proposal Offer sets forth special contract requirements. *See* White Decl., Ex. A at 76. One of those requirements is that the "Contractor shall provide insurance coverage for all risks associated with performing this Contract and its Task Orders." White Decl., Ex. A at 88. The agreement also states that the "Contractor assumes full liability and responsibility for all losses and damages to property or injuries to persons occasioned through the performance of any services or the use, maintenance and operation of equipment and vehicles by the Contractor's employees and agents." White Decl., Ex. A at 88. Another special contract requirement states that "the Contractor shall defend, indemnify, and hold harmless the Government, its officers, agents, and employees" even in cases where "the injury, death, or damage may have been caused by negligence of the Government." White Decl., Ex. A at 91.

Section J of the Price Proposal Offer includes a range of exhibits and attachments. *See* White Decl., Ex. A at 108–09. One of the exhibits provides general information on the GSA facility in question. *See* White Decl., Ex. A at 110. The exhibit sets forth GSA's staffing of the extensive tunnel facility, which "comprises one manager, three mechanical engineering technician (MET) supervisors, and ten mechanical engineering technicians." White Decl., Ex. A at 110. According to the description, "[t]he MET supervisors have been facilitating and assuring quality of Steam Distribution Complex maintenance and repairs performed by the current

maintenance contractor," presumably meaning the contractor that preceded M & M. *See* White Decl., Ex. A at 110.

Federal Defendants' second declarant, Mr. Westphal, is employed by GSA as the Manager of the Steam Distribution Branch in Washington, D.C. Westphal Decl. ¶ 1. In general, Mr. Westphal states that M & M did, in fact, perform the duties set forth in the agreement between GSA and M & M. *See* Westphal Decl. ¶¶ 5–7. Mr. Westphal states that these duties included "all operations and maintenance services" at the steam pipe location where Verizon alleges its equipment was damaged. *See* Westphal Decl. ¶ 5. Mr. Westphal states that "GSA did not routinely direct, supervise or exercise control over [M & M's] day-to-day operations and maintenance duties," nor did GSA "control[] how [M & M] implemented its operations and maintenance practices on a daily or any other routine basis." Westphal Decl. ¶ 8. Finally, Mr. Westphal states that "GSA does not routinely direct, control, or supervise the operations and maintenance services within the GSA [Steam Distribution System] because an independent contractor is responsible for those duties." Westphal Decl. ¶ 11.

### C. Procedural History

In September 2016, Verizon brought suit against the United States and GSA in this Court. *See* Compl., ECF No. 1 at 1. Verizon filed an Amended Complaint on October 18, 2016 that named M & M Contractors, Inc. as an additional Defendant.[7] *See* Am. Compl. at 1. The United States and GSA move to dismiss Verizon's Amended Complaint. *See* Fed. Defs.' Mot. Dismiss ("Mot. Dismiss"), ECF No. 12. Specifically, Federal Defendants argue that Verizon's claims cannot be brought against GSA under the FTCA, *see* Mem. P. & A. Supp. Fed. Defs.' Mot.

---

[7] A summons has been issued as to Defendant M & M Contractors, Inc. *See* Summons, ECF No. 9. At this time, Verizon has not filed an affidavit indicating that M & M Contractors, Inc. has been served.

Dismiss ("Defs.' Mem.") at 5, ECF No. 12, that Verizon's claims against Federal Defendants are barred by sovereign immunity, *see* Defs.' Mem. at 5–9, and that Verizon fails to state a claim upon which relief can be granted, *see* Defs.' Mem. at 9. Federal Defendants' motion is fully briefed and ripe for decision. *See* Pl.'s Mem. P. & A. Supp. Pl.'s Opp'n Fed. Defs.' Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 13-1; Fed. Defs.' Reply Pl.'s Opp'n Fed. Defs.' Mot. Dismiss ("Defs.' Reply"), ECF No. 14.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). It is the plaintiff's burden to establish that the court has subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When considering whether it has jurisdiction, a court must accept "the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). In this context, a court may also "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (quoting *Herbert*, 974 F.2d at 197).

# IV.  ANALYSIS

Federal Defendants argue that sovereign immunity bars the claims Verizon has brought against both GSA and the United States.  The Court addresses Federal Defendants' arguments in turn.

Sovereign immunity shields the federal government and its agencies from suit and is "jurisdictional in nature." *Am. Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 79 (D.D.C. 2012) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)) (other citations omitted).  The government may waive immunity, but such a waiver "must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).  "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) (citing *Meyer*, 510 U.S. at 475).  The plaintiff bears the burden "of establishing both the court's statutory jurisdiction and the government's waiver of its sovereign immunity." *Am. Road & Transp. Builders Ass'n*, 865 F. Supp. 2d at 80 (citations omitted).  Once a court "determines that it lacks subject matter jurisdiction, it can proceed no further." *Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997).

The FTCA contains a limited waiver of sovereign immunity that allows the United States to be sued for the negligent acts or omissions of its employees acting within the scope of their employment.  *See* 28 U.S.C. § 1346(b)(1); *see also United States v. Orleans*, 425 U.S. 807, 813 (1976).  Specifically, the FTCA waives sovereign immunity based on an "injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . if a private person[] would be liable to the claimant."  28 U.S.C. § 1346(b)(1).

## A. Claims Against the GSA

The Court first turns to the counts Verizon brings directly against the GSA. *See* Am. Compl. ¶¶ 28–43 (setting forth Counts IV–VI). Federal Defendants argue that, "[u]nder the clear terms of the FTCA, only the United States is a proper defendant to such a suit." Defs.' Mem. at 5. Federal Defendants contend that Verizon has brought "virtually identical claims against both the United States and the GSA," but that the Court lacks subject matter jurisdiction over the claims against the GSA. Defs.' Mem. at 5. Verizon does not respond to this point in its opposition to Federal Defendants' motion to dismiss. *See generally* Pl.'s Opp'n; *see also* Defs.' Reply at 2 ("Verizon did not even attempt to address these arguments in its opposition . . . .").

The only proper defendant in an action brought under the FTCA is the United States. *See Davis v. United States*, 196 F. Supp. 3d 106, 110 n.2 (D.D.C. 2016) ("[T]he United States is the only proper defendant in an action under the FTCA."); *Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 16 (D.D.C. 2015) ("FTCA suits 'must name the United States as defendant.'" (quoting *Goddard v. D.C. Redevelopment Land Agency*, 287 F.2d 343, 345–46 (D.C. Cir. 1961))); *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 81 (D.D.C. 2005) ("[T]he proper defendant is the United States, not Treasury."). Even if a federal agency may sue and be sued in its own name, the FTCA bars direct claims against federal agencies. *See* 28 U.S.C. § 2679(a); *see also Cox v. Sec'y of Labor*, 739 F. Supp. 28, 29 (D.D.C. 1990) ("The FTCA directs that the exclusive remedy for tort claims is an action against the United States rather than against the individuals or the particular government agencies.").

Here, Verizon's Amended Complaint brings identical negligence, nuisance, and trespass/interference with easement claims against *both* the United States and GSA. *Compare* Am. Compl. ¶¶ 12–27 (bringing Counts I–III against the United States) *with* Am. Compl. ¶¶ 28–

43 (bringing Counts IV–VI against GSA). But the FTCA permits only claims against the United States, *see* 28 U.S.C. § 1346(b)(1), and bars claims brought directly against federal agencies, *see* 28 U.S.C. § 2679(a). Consistent with longstanding precedent, the Court finds that Verizon may not bring claims pursuant to the FTCA directly against GSA. *See, e.g.*, *Davis*, 196 F. Supp. 3d at 110 n.2; *Johnson*, 133 F. Supp. 3d at 16; *Daisley*, 372 F. Supp. 2d at 81; *Cox*, 739 F. Supp. at 29. Thus, the Court dismisses Counts IV, V, and VI of the Amended Complaint for lack of subject matter jurisdiction.

### B. Claims Against the United States

The Court next turns to the counts Verizon brings against the United States. *See* Am. Compl. ¶¶ 12–27 (setting forth Counts I–III). Federal Defendants argue that these claims are barred by the independent contractor exception to the FTCA and that the Court must therefore dismiss Verizon's claims for lack of subject matter jurisdiction. *See* Defs.' Mem. at 5–9.

### 1. Independent Contractor Exception to the FTCA

As previously stated, the FTCA's waiver of sovereign immunity is limited in scope and permits the United States to be sued only for the negligent acts or omissions of its employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1); *see also United States v. Orleans*, 425 U.S. 807, 813 (1976). The text of the FTCA makes clear that the waiver of sovereign immunity applies to an "injury . . . caused by a negligent or wrongful act or omission of *any employee of the Government* while acting within the scope of his office or employment . . . if a private person[] would be liable to the claimant." 28 U.S.C. § 1346(b)(1) (emphasis added).

The FTCA's definition of "employee of the government" includes "employees of any federal agency," but the definition of "federal agency" explicitly excludes "any contractor with

the United States." 28 U.S.C. § 2671. Based on this language, the Supreme Court has recognized an "independent contractor exception" to the FTCA. *See Orleans*, 425 U.S. at 814–15. Following *Orleans*, courts "routinely hold that the United States cannot be sued where the alleged duty of care has been delegated to an independent contractor." *Hsieh v. Consol. Eng'g Servs., Inc.*, 569 F. Supp. 2d 159, 176 (D.D.C. 2008) (citing *Cannon v. United States*, 645 F.2d 1128, 1133–39 (D.C. Cir. 1981); *Cooper v. United States Gov't*, 225 F. Supp. 2d 1, 4 (D.D.C. 2002)).

When considering whether the independent contractor exception to the FTCA applies, a court must evaluate the level of control that the United States exercises over the contractor. Under this exception, the government can only be liable for a contractor's acts, if the contractor's "day-to-day operations are supervised by the Federal Government." *Orleans*, 425 U.S. at 815. The Supreme Court has further explained that a "critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *Id.* at 814 (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)). The D.C. Circuit has made clear that "the government may 'fix specific and precise conditions to implement federal objectives' without becoming liable for an independent contractor's negligence." *Macharia v. United States*, 334 F.3d 61, 68–69 (D.C. Cir. 2003) (quoting *Orleans*, 425 U.S. at 816). The United States is also permitted to "reserve the right to inspect the contractor's work and monitor its compliance with federal law without vitiating the independent contractor exception." *Hsieh*, 569 F. Supp. 2d at 177 (citing *Orleans*, 425 U.S. at 815).

The Court agrees with Federal Defendants that the independent contractor exception applies to duties that GSA contracted to M & M and that the Court therefore lacks subject matter

jurisdiction over claims arising from those duties. Here, the Amended Complaint alleges that "steam from and/or off steam pipes owned, maintained and controlled by [Federal Defendants] caused damage to Verizon's underground facilities." Am. Compl. ¶ 8. The Amended Complaint also alleges that, "[o]n or about November 6, 2014, agents, servants, and/or employees of M & M Contractors, Inc. were repairing steam pipes . . . and caused damage to Verizon's underground facilities." Am. Compl. ¶ 9. Thus, the factual allegations in the Amended Complaint rely, at least in part, on the actions of M & M and its employees. *See* Am. Compl. ¶ 9. An employee of M & M is not an "employee of the government" for the purposes of the FTCA. *See* 28 U.S.C. § 1346(b)(1).

The contract at issue states that M & M "shall provide all management, labor, supervision, vehicles, equipment, and materials to perform all work" described in the agreement. White Decl., Ex. A at 52. Among other things, the described tasks include "tours, inspections, basic operation, preventive maintenance, minor repairs and replacements (≤$1,000), and general housekeeping." White Decl., Ex. A at 52. Under the agreement, M & M "accepts full responsibility for the management and supervision of maintenance, minor repairs, inspections, and housekeeping of" the facility and "recognizes that performance of the work described . . . will not convert the acts of the Contractor into acts of the Government, and that the Government will not physically supervise the conduct of the Contractor's day to day activities." White Decl., Ex. A at 53.

Mr. Westphal also declares that "GSA did not routinely direct, supervise or exercise control over [M & M's] day-to-day operations and maintenance duties," nor did GSA "control[] how [M & M] implemented its operations and maintenance practices on a daily or any other routine basis." Westphal Decl. ¶ 8. In light of M & M's responsibilities, "GSA does not

routinely direct, control, or supervise the operations and maintenance services within the GSA [Steam Distribution System] because an independent contractor is responsible for those duties." Westphal Decl. ¶ 11.

To be sure, the agreement calls for close coordination between GSA and M & M and gives GSA the right to conduct oversight and inspections. Verizon identifies several such provisions in the contract. *See* Pl.'s Opp'n at 4–5. For instance, the contract requires M & M to "coordinate with the Government regarding the prioritization of maintenance and repair work, including any additional tasks." White Decl., Ex. A at 52. It also gives GSA the right to "inspect the Contractor's performance of work to determine compliance with the solicitation requirements." White Decl., Ex. A at 53. Similarly, GSA is permitted to "re-prioritize the Contractor's maintenance and repair work when doing so is in the best interest of the Government." White Decl., Ex. A at 53. GSA may also set forth specific projects through task orders. *See* White Decl., Ex. A at 52. As Verizon notes, the contract also requires GSA to provide radios to all employees for communications with the federal government. *See* White Decl., Ex. A at 61.

Despite Verizon's protestations, these facts are not sufficient to override the independent contractor exception to the FTCA. The terms of the agreement clearly do not constitute supervision of "day-to-day operations . . . by the Federal Government." *Orleans*, 425 U.S. at 815. Nor does the federal government "control the detailed physical performance of the contractor." *Logue*, 412 U.S. at 528. Instead, the agreement creates a structure that delegates routine inspections, maintenance, and repairs to M & M, while retaining GSA's right to inspect its contractor's activities and to set clear, specific objectives. The federal government is permitted to "'fix specific and precise conditions to implement federal objectives' without

14

becoming liable for an independent contractor's negligence." *Macharia*, 334 F.3d at 68–69 (quoting *Orleans*, 425 U.S. at 816). Similarly, it may "reserve the right to inspect the contractor's work and monitor its compliance with federal law without vitiating the independent contractor exception." *Hsieh*, 569 F. Supp. 2d at 177 (citing *Orleans*, 425 U.S. at 815). This degree of oversight is consistent with the staffing described in the contract, which states that "supervisors have been facilitating and assuring quality of Steam Distribution Complex maintenance and repairs performed by the . . . contractor" preceding M & M. *See* White Decl., Ex. A at 110.

In fact, another court in this District addressed claims arising from the same facilities at issue in this case. *See Hsieh*, 569 F. Supp. 2d at 162. The contract and other evidence presented in *Hsieih* are not identical to this case, but the broad facts are similar. *See id.* at 167–169. The court concluded that "[e]vidence that GSA employees performed inspections as provided for in the . . . Contract . . . does not establish that the Federal Defendants had detailed control or day-to-day supervision of [the contractor's] physical performance." *Id.* at 178. Similarly, GSA's requirement that the contractor "follow specific procedures," as well as the fact that GSA "maintained the right to inspect that work," was not sufficient to "render the Federal Defendants liable for those tasks . . . that were validly delegated to [the contractor]." *Id.*

The Court reaches the same conclusion here. Through its contract, the federal government delegated the duty to conduct inspections and routine maintenance and repairs to M & M. GSA did not control M & M's "day-to-day operations," *Orleans*, 425 U.S. at 815, or "control [its] . . . detailed physical performance," *Logue*, 412 U.S. at 528. Thus, the Court finds that the independent contractor exception to the FTCA bars claims arising from the duties delegated to M & M in contract. Because the United States has not waived its sovereign immunity as to those claims, the Court lacks subject jurisdiction over them.

2.  Potential Allegations Outside the Scope of the Contract

Verizon notes that the agreement between GSA and M & M did not take effect until July 1, 2014.  Pl.'s Opp'n at 5.  In a brief argument that does not cite any legal authority, Verizon contends that "[t]he lack of maintenance, inspection, and repair may arise from the ownership, maintenance, and control by the Federal Defendants before such contract, placing the duties squarely on the Federal Defendants rather than their subcontractor."  Pl.'s Opp'n at 5.

Federal Defendants' response is equally brief.  Federal Defendants contend that Verizon "appears to speculate . . .  that the cause of the damage may be related to a lack of maintenance, inspection, or repair prior to the . . . maintenance contract with M & M."  Defs.' Reply at 5.  Federal Defendants argue that Verizon's position is "directly contradicted by the Amended Complaint, which states unequivocally . . . that M & M Contractors' employees caused damages to Verizon's underground on or about November 6, 2014."  Defs.' Reply at 5.

The parties' different perspectives appear to be rooted in Verizon's vague allegations with regard to the cause of the purported damage.  To be sure, the Amended Complaint alleges that *repairs conducted by M & M* on or about November 6, 2014 "caused damage to Verizon's underground facilities."  Am. Compl. ¶ 9.  But Verizon also alleges, more generally, that "steam from and/or off steam pipes owned, maintained and controlled by [Federal Defendants'] caused damage" on or about that date.  Am. Compl. ¶ 8.  In the context of its negligence claim against the United States, Verizon alleges that the United States acted negligently through its "failure to exercise due care to prevent steam leaks, failure to exercise due care to prevent its pipes from causing secondary steam, failure to properly notify Verizon of the potential of harm, failure to properly instruct and supervise agent, servants and/or employees . . . and other negligence."  Am. Compl. ¶ 14.  These more general allegations are not expressly limited to the time period covered

by the contract at issue here.  Similarly, the vague nature of the allegations makes it impossible for the Court to determine whether the alleged acts were delegated to M & M or any other contractor.

To clarify issues raised here, the Court will order Verizon to provide a more definite statement of its claims pursuant to Federal Rule of Civil Procedure 12(e).  Under Rule 12(e) a "party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  Although Rule 12(e) refers to a motion made by a party, other courts in this jurisdiction have construed motions to dismiss as motions for a more definite statement in appropriate circumstances.  *See, e.g.*, *Koch v. White*, No. 12-1934, 2014 WL 1273427, at *1 (D.D.C. Mar. 31, 2014); *Bouknight v. District of Columbia*, 538 F. Supp. 2d 44, 49 (D.D.C. 2008); *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 158–59 (D.D.C. 2007); *see also* 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1376 (3d ed. 2017) ("If the pleading is impermissibly vague, the court may act under Rule 12(b)(6) or Rule 12(e), whichever is appropriate, without regard to how the motion is denominated.").

To be sure, courts are "reluctant to compel a more definite statement pursuant to Rule 12(e)" and "will generally deny a motion for a more definite statement where the information sought may be obtained in discovery."  *Feldman v. CIA*, 797 F. Supp. 2d 29, 42 (D.D.C. 2011) (quoting *Hilska v. Jones*, 217 F.R.D. 16, 21 (D.D.C. 2003)).  But that reluctance is not absolute.  For example, the Supreme Court has explained that requiring a more definite statement may be appropriate where qualified immunity is at issue.  *See Crawford-El v. Britton*, 523 U.S. 574, 597–98 (1998).  In that context, a court "must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings."  *Id.*; *see also Powers-*

*Bunce*, 479 F. Supp. 2d at 158 (explaining that "courts have inherent authority to order a more definite statement" in this context). Like qualified immunity, the independent contractor exception is a threshold bar that must be considered at the outset of litigation. Here, it would be inappropriate to subject the Federal Defendants to further proceedings if all of Verizon's claims arise from acts delegated to M & M. *See supra* Part IV.B.1. Requiring Verizon to clarify its vague Amended Complaint and provide a more definite statement of its claims will permit the Court to make that determination.

Thus, at this time, the Court dismisses Counts I, II, and III, only to the extent that the claims arise from the duties delegated to M & M in the contract before the Court. Once Verizon has provided a more definite statement of its allegations, Federal Defendants may renew their motions to dismiss, if necessary.

### 3. Nondelegable Duties for Inherently Dangerous Activities

Verizon argues that the independent contractor exemption to the FTCA is irrelevant because the duty to maintain and repair the steam distribution facility "is a nondelegable duty based on the ultrahazardous nature of the work." Pl.'s Opp'n at 6. Verizon relies on a series of citations to District of Columbia law to support this position. *See* Pl.'s Opp'n at 6–7.

Under District of Columbia law, the "general rule is that an individual or corporation is not liable for injuries resulting from the work of an independent contractor." *W.M. Schlosser Co. v. Maryland Drywall Co.*, 673 A.2d 647, 651 (D.C. 1996) (quoting *Washington Metro. Area Transit Auth. v. L'Enfant Plaza Prop., Inc.*, 448 A.2d 864 (D.C. 1982)). But this general rule does not apply where the work "is inherently dangerous." *Id.* (quoting *Levy v. Currier*, 587 A.2d 205, 209 (D.C. 1991)). Instead, where work is inherently dangerous, "the contractee should not be allowed to escape liability and is obligated to contemplate and guard against such dangers."

*Id.* at 651 n.10. Verizon contends that maintenance of the steam pipes is inherently dangerous and that Federal Defendants "should not be permitted to escape liability for the damage their steam pipes caused to [Verizon's] telecommunication facilities." Pl.'s Opp'n at 7.

Verizon's argument is misplaced. In fact, the D.C. Circuit has expressly rejected this line of reasoning. In *Clark v. United States*, the D.C. Circuit stated that the federal government does not "have a nondelegable duty under District of Columbia law." *Clark v. United States*, 52 F.3d 1122, 1995 WL 225702, at *1 (D.C. Cir. 1995) (per curiam) (unpublished table decision). The court explained that "[t]he nondelegable duty doctrine is inapplicable to cases arising under the Federal Tort Claims Act because federal law does not permit the application to the United States of a generalized state-defined duty." *Id.* The court relied on the Fourth Circuit case *Berkman v. United States*, 957 F.2d 108 (4th Cir. 1992). *See id.*

In *Berkman*, the Fourth Circuit rejected the plaintiff's reliance on the rule—articulated in Virginia law—that a landowner cannot delegate to a contractor the duty to maintain its premises in a reasonably safe manner. *See Berkman*, 957 F.2d at 111–13. The court concluded that, "[b]y expressly waiving immunity for the tortious conduct of its employees, and only its employees, the FTCA requires a more focused approach that requires the courts to determine the relationship to the United States of the actor whose negligence might be imputed to the government under state law." *Id.* at 113; *see also Clark*, 52 F.3d 1122, 1995 WL 225702, at *1 (quoting this language). To be sure, *Berkman* recognized that one other circuit had reached a different conclusion. *See Berkman*, 957 F.2d at 113 (noting disagreement with the Eleventh Circuit's decision in *Dickerson, Inc. v. United States*, 875 F.2d 1577 (11th Cir. 1989)). But the D.C. Circuit came down firmly on the side of *Berkman* and the Fourth Circuit. *See Clark*, 52 F.3d 1122, 1995 WL 225702, at *1.

Other circuits have also endorsed the rule set forth in *Berkman*. *See, e.g., Berrien v. United States*, 711 F.3d 654, 658 (6th Cir. 2013) ("[S]tate-law concepts of nondelegable duty cannot be applied in the FTCA context to undermine the contractor exception."); *Alinsky v. United States*, 415 F.3d 639, 645 (7th Cir. 2005) ("State common law principles cannot overcome [the FTCA]."); *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997) ("Thus, any state law nondelegable duty cannot, on its own, override the United States' sovereign immunity from suits for injuries caused by its independent contractors."); *Norman v. United States*, 111 F.3d 356, 358 (3d Cir. 1997) ("We believe the Fourth Circuit [in *Berkman*] offers the better reasoned analysis and we accept it as our own."). And courts in this District have also rejected the application of nondelegable duties under state law to FTCA claims. *See e.g.*, *Jennings v. United States*, 530 F. Supp. 40, 45 n.6 (D.D.C. 1981) (noting in dicta that "a 'nondelegability' theory also fails" because it "rests on a theory of absolute or strict liability, a theory foreclosed under the FTCA"); *Hockman v. United States*, 741 F. Supp. 5, 8 (D.D.C. 1990) ("[T]he law is well-settled that the government cannot be held strictly or absolutely liable under the FTCA for ultrahazardous activity."). *But see Hale v. United States*, No. 13-1390, 2015 WL 7760161, at *6 n.3 (D.D.C. Dec. 2, 2015) (noting that "district courts in other jurisdictions have rejected FTCA claims based on common law premises liability theories," but refusing to dismiss a FTCA claim where "the District of Columbia has adopted a negligence standard for premises liability").

Consistent with the D.C. Circuit's decision in *Clark* and the weight of authority in other circuits, this Court finds that the United States does not have a nondelegable duty under District of Columbia law for inherently dangerous activities. The Supreme Court has explained that Congress defined the scope of the independent contractor exception in statute, instead of relying on existing state common law. *See Logue*, 412 U.S. at 527. This Court cannot broaden

Congress's waiver of the government's sovereign immunity through the invocation of state common law principles. *Cf. FAA v. Cooper*, 566 U.S. 284, 290 (2012) (explaining that waivers of sovereign immunity must be strictly construed); *Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990) ("[W]aivers of sovereign immunity. . . must be narrowly construed."). Verizon's reliance on the District of Columbia law of nondelegable duties for inherently dangerous activities must be rejected. *See Clark*, 52 F.3d 1122, 1995 WL 225702, at *1; *see also Alinsky*, 415 F.3d at 645; *Berkman*, 957 F.2d at 113.

*       *       *

The Court finds that the independent contractor exception to the FTCA bars claims arising from the duties delegated to M & M by contract. But the Court also concludes that the vague allegations in Verizon's Amended Complaint prevent the Court from determining whether Verizon has alleged any claims that fall outside the scope of the contract between the government and M & M. Thus, the Court orders Verizon to provide a more definite statement of its claims.

The independent contractor exception to the FTCA implicates the Court's subject matter jurisdiction, *see* 28 U.S.C. § 1346(b)(1), and the Court cannot reach the merits of Verizon's case against the United States without assuring itself that it has subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998) (rejecting the principle of hypothetical jurisdiction); *see also Hsieh*, 569 F. Supp. 2d at 179–80. The Court, therefore, does not reach Federal Defendants' arguments under Rule 12(b)(6) that Verizon has failed to state a claim upon which relief can be granted at this time. *Cf. Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997) ("[T]he rule is strict that once a court determines that it lacks subject matter jurisdiction, it can proceed no further."). Defendants may renew these arguments, and any other

bases for dismissal, after Verizon provides a more definite statement of its allegations, if necessary.

Finally, the Court notes again that Verizon has not indicated that it has served M & M.  Nor has counsel for M & M appeared before this Court.  Therefore, the Court does not address Verizon's claims against M & M at this time.


## V.  CONCLUSION

For the foregoing reasons, Federal Defendants' Motion to Dismiss (ECF No. 12) is **GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  June 8, 2017                                    RUDOLPH CONTRERAS
                                                                   United States District Judge